UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RONALD D. LOMBA, Plaintiff, | : | |
| v. | : | CA 05-373 M |
| MICHAEL J. ASTRUE,[1] Commissioner, Social Security Administration, Defendant. | : | |

**MEMORANDUM AND ORDER**

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB") under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act"). Plaintiff Ronald D. Lomba ("Plaintiff") has filed a motion for an order reversing the decision of the Commissioner and remanding the matter for further proceedings. Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.

With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is not

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue has been substituted for Jo Anne B. Barnhart as Defendant in this action. See Fed. R. Civ. P. 25(d)(1) (2008) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name ...."); see also 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

supported by substantial evidence in the record. Accordingly, based on the following analysis, I order that Plaintiff's Motion for Order Reversing the Decision of the Commissioner and Remanding for Further Proceedings (Document ("Doc.") #14) ("Motion to Reverse and Remand") be granted and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. #17) ("Motion to Affirm") be denied.

**Facts and Travel**

Plaintiff was born in 1968 and was thirty-five years old at the time of the hearing before the Administrative Law Judge ("ALJ"). (Record ("R.") at 21, 56) He has a ninth grade education and past relevant work experience as a drywall installer. (R. at 21, 124)

Plaintiff filed an application for DIB on September 12, 2002, alleging disability since September 12, 2001, due to nerve damage, back pain, tennis elbow, carpal tunnel, and asthma. (R. at 20-21) The application was denied initially and on reconsideration, (R. at 27, 28), and a request for a hearing before an ALJ was timely filed, (R. at 38). A hearing was held on May 19, 2004, at which Plaintiff, represented by counsel, appeared and testified. (R. at 250-87) A Medical Expert ("ME"), Dr. Edward Spindell testified, (R. at 277-82), as well as an impartial vocational expert ("VE"), (R. at 282-87). On September 13, 2004, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act and, therefore, not entitled to DIB. (R. at 20-26) Plaintiff requested review by the Appeals Council, (R. at 14, 15), which on June 30, 2005, denied his request, (R. at 8-10), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 8). Thereafter, Plaintiff filed this action for judicial review.

## Issue

The issue for determination is whether substantial evidence supports the Commissioner's decision that Plaintiff is not disabled within the meaning of the Act.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[3] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The determination of substantiality is based upon an evaluation of the record as a whole. Id. (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)). The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id.. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

[3] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999)(quoting Richardson v. Perales).

**Law**

To qualify for DIB, a claimant must meet certain insured status requirements,[4] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act. See 42 U.S.C. § 423(a). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[5] 20 C.F.R. § 404.1521(a) (2007). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. §

---

[4] The ALJ found that Plaintiff met the nondisability requirements for a period of disability and Disability Insurance Benefits ("DIB") and that he was insured for benefits through September 13, 2004. (R. at 25)

[5] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b) (2007). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3 Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

404.1528 (2007)("Your statements alone are not enough to establish that there is a physical or mental impairment").

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520(a) (2007); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 404.1520(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

**ALJ's Decision**

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, (R. at 25); that Plaintiff's lumbar disc disease was a severe impairment, (id.), but that it did not meet or equal in severity an impairment listed in Appendix 1, Subpart P, Regulations No. 4, (R. at 26); that Plaintiff's allegations regarding his limitations were not totally credible, (id.); that Plaintiff retained the residual functional capacity ("RFC") to lift and carry ten pounds frequently and twenty pounds occasionally, with no repetitive bending, crawling, crouching,

stooping, or climbing ropes/ladders/scaffolds, repetitive grabbing or twisting with the right dominant hand, or concentrated exposure to cold, damp, or vibration, and no exposure to unprotected heights, (id.); that Plaintiff was unable to perform any of his past relevant work, (id.); that Plaintiff had a "limited education," (id.), and was "a younger individual between the ages of 18 and 44," (id.); that Plaintiff had the residual functional capacity to perform a significant range of light work, (id.); that there existed a significant number of jobs in the national economy that Plaintiff could perform, (id.); and that Plaintiff was not under a "disability" as defined by the Act at any time through the date of the ALJ's decision, (id.).

**Errors Claimed**

Plaintiff alleges that: (1) the ALJ erred in relying upon the VE's testimony to carry out the Commissioner's burden of proof at step five of the sequential evaluation process in violation of Social Security Ruling ("SSR") 00-4p, see Plaintiff's Memorandum of Law in Support of Reversal of Commissioner's Denial of Benefits ("Plaintiff's Mem.") at 19; (2) the ALJ erred in failing to find that Plaintiff's carpal tunnel syndrome was a "severe impairment," id. at 20; and (3) the ALJ erred in finding Plaintiff's subjective allegations regarding his limitations not fully credible, id. at 23. Because the Court concludes that the ALJ and the ME overlooked or misconstrued medical evidence in the record and that this error appears to have affected the ALJ's credibility determination, this matter must be remanded. Accordingly, Plaintiff's claims of error are addressed, although not exactly as formulated by Plaintiff.

**Discussion**

**I. Substantial evidence does not support the ALJ's finding that Plaintiff's carpal tunnel syndrome is not a severe impairment.**

**A. The severity finding**

It is difficult to determine with certainty what the ALJ found with regard to the severity of Plaintiff's carpal tunnel syndrome because her findings on this issue are contradictory. She initially states that she finds that "the claimant's carpal tunnel, tennis elbow, and asthma are 'non-severe.'" (R. at 22) In the following sentence she states that "the claimant has lumbar disc disease and carpal tunnel syndrome, impairments that are 'severe' within the meaning of the Regulations ...." (Id.) Forced to resolve this conflict, the Court concludes that the ALJ found that Plaintiff's carpal tunnel syndrome was not a severe impairment. The Court reaches this conclusion for the following reasons.

First, in the "Findings," (R. at 25), section of her decision, the only impairment which the ALJ states that she finds to be "severe" is Plaintiff's lumbar disc disease, (id.).

Second, prior to her initial statement that Plaintiff's carpal tunnel is "non-severe," (R. at 22), the ALJ gives reasons which (if true) would appear to support a finding of non-severe:

> The claimant alleges disability due to back pain, carpal tunnel syndrome, tennis elbow, and asthma. However[,] there are no vocational limitations noted with regard to tennis elbow, [and] progress notes show the claimant's carpal tunnel symptoms improved after he underwent a release in November 2000. Dr. Spindell testified that the claimant had a good recovery after surgery.

(R. at 21)

Third, in her discussion of Dr. Andrew Green's treatment of Plaintiff's carpal tunnel, the ALJ recounts only positive statements from Dr. Green's records concerning that malady:

> As of December 19, 2000, Dr. Green noted he was doing well, with good strength and motion. On February 14, 2001[,] Dr. Green noted he was recovering well and limited him to lifting no more than 10 pounds, with no repetitive use of the right hand. On March 28, 2001[,]

> Dr. Green released him back to regular work without restriction.

(R. at 22-23) There is no mention by the ALJ of Dr. Green's later findings in May and September of 2001 that the carpal tunnel had reccurred, (R. at 84, 196-97), and that Plaintiff had developed "trigger fingers," (R. at 79, 196-97). Equally significant, there is no mention by the ALJ of Dr. Green's opinion that as of September 2001 Plaintiff had a "[p]artial disability," (R. at 84), because of his right carpal tunnel syndrome, (R. at 84-85), which precluded repetitive use of his right hand, (R. at 85).[6] In fact, the last statement made about Dr. Green by the ALJ is that quoted above, i.e., that Plaintiff was "released ... back to regular work without restriction." (R. at 23)

Fourth, the ALJ found Plaintiff "not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports." (R. at 23) The first alleged "discrepanc[y]," (id.), cited by the ALJ was that:

> The claimant testified his carpal tunnel has returned and he experiences hand tingling and numbness. However, the record reflects no current complaints, and follow-up electromagnetic studies were normal. The claimant has not had elbow treatment for years and his carpal tunnel symptoms have resolved.

---

[6] Dr. Green testified at his January 4, 2002, deposition:

> Q. What limitations or restrictions would you place upon Mr. Lomba's returning to the work force in some capacity as it relates to his right carpal tunnel syndrome and only to his right carpal tunnel syndrome?
>
> A. No repetitive use, no repetitive gripping, no vibration as it related to some of the things that he did do at work.

(R. at 85)

(R. at 23) The ALJ's statement that Plaintiff's "carpal tunnel symptoms have resolved" (which is incorrect and at odds with the record) further supports the Court's conclusion that the ALJ erroneously determined that Plaintiff's carpal tunnel was not "severe."

Fifth, the ALJ found that the ME's "opinion is consistent with the preponderance of evidence in the record and thus entitled to great weight." (R. at 24) The ME, Dr. Spindell, testified that he did not know why a DDS medical consultant had found that Plaintiff had manipulative limitations, (R. at 280), incorrectly opining that there were no objective findings to support such a limitation, (id.); see also (R. at 82, 196-97, 229). Dr. Spindell did not assess any functional limitation based on Plaintiff's right hand and wrist. (R. at 280) He appeared to sum up Plaintiff's physical condition without mentioning the partial disability in Plaintiff's right hand. (R. at 278) The ALJ specifically cited the ME's testimony that "the claimant had a good recovery after surgery," (R. at 21), two sentences before "find[ing]," (R. at 22), that Plaintiff's carpal tunnel was "non-severe," (id.). Given that the ALJ gave Dr. Spindell's opinion "great weight," (R. at 24), and that Dr. Spindell testified that he knew of no basis for any restriction or limitation on Plaintiff's ability to use his right hand, (R. at 280), the Court takes this as a further indication that the ALJ found that Plaintiff's carpal tunnel was not a severe impairment.

**B. The severity finding is not supported by substantial evidence.**

Having determined the ALJ found that Plaintiff's carpal tunnel syndrome was not a severe impairment, the Court turns to the question of whether this finding is supported by substantial evidence. The Court concludes that it is not.

The Court of Appeals for the First Circuit has stated that the step two severity determination is a "*de minimis* policy, designed to do no more than screen out groundless claims." McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986). A finding of "nonsevere" is only to be made where "medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work ...." Id. (quoting SSR 85-28, 1985 WL 56856 (S.S.A.)).

Here Dr. Green, the treating physician for Plaintiff's elbow, wrist, and hand problems, (R. at 76-77), found in May and September of 2001 that Plaintiff suffered a recurrence of his carpal tunnel and that Plaintiff had also developed stenosing flexor tenosynovitis or "trigger fingers," (R. at 78-84, 196-97). Dr. Green testified in a deposition that May 30, 2001, was the first occasion on which Plaintiff presented to him with the trigger fingers condition. (R. at 81) Dr. Green testified in that same deposition that Plaintiff "has a median neuropathy that was not ... completely resolved or eliminated by that first surgery," (R. at 84), and that as of September 12, 2001, Plaintiff had a "partial disability," (id.), as a result of his right-sided carpal tunnel syndrome, (id.).

This disability was apparently recognized by the DDS medical consultant, who, citing Dr. Green's September 2001 findings, (R. at 228)(citing (R. at 197)), found that Plaintiff was limited in his ability to handle items and imposed restrictions, (R. at 229). As previously noted, when the ALJ asked the ME about these limitations, the ME answered that he did not know why the DDS medical consultant had "said no grabbing, pinching, pushing, pulling or vibration with the right hand." (R. at 280) The ME continued:

> You know, obviously he was operated [on] and obviously he has scars which is a residual of the surgeries but I

> don't see anything in the records today that he has ongoing weakness, atrophy, positive Tinel's sign, Phalen's sign or findings of that sort.

(R. at 281)

The Court can only conclude from the above statement that the ME overlooked the deposition testimony of Dr. Green, (R. at 77-84), Dr. Green's reports of May 30, 2001, and September 12, 2001, (R. at 196-97), and the DDS medical consultant's citation to these reports, (R. at 228). Dr. Green testified at the deposition that on September 12, 2001, Plaintiff "had a positive Tinel's sign over the carpal canal and had triggering of the middle finger," (R. at 82), that Plaintiff had a recurrence of his numbness and symptoms, (R. at 84), and that Plaintiff had a median neuropathy that was not completely resolved or eliminated by the first surgery, (id.). In his May 30, 2001, report, Dr. Green stated that Plaintiff had "neurologic symptoms despite carpal tunnel release," (R. at 196), and that Plaintiff "[p]robably has flexor tenosynovitis," (id.). Dr. Green opined that Plaintiff should "consider another type of work that does not require the same level of hand usage." (Id.) The September 12, 2001, report recorded that Plaintiff "continues to be bothered by hand complaints that I think are related to forceful repetitive activities," (R. at 197), and also that Plaintiff had a positive Tinel's sign, (id.).

Despite this evidence, the ME testified that Plaintiff "had a right carpal tunnel release in November of 2000. There's nothing in the records -- the records indicate that he made a good recovery. I don't see anything in the record to indicate ongoing difficulties, unless I missed it." (R. at 277) He further testified that "the last note said that [Plaintiff] made a fine recovery from all these operations." (R. at 280) When Plaintiff's counsel asked the ME if he had taken into account Plaintiff's carpal tunnel problem, the ME responded that he had

"nothing in the record beyond his prior surgery dating back to 2000 and 1997 that documents ongoing complaints referable to the right upper extremity." (R. at 281) These statements by the ME are directly contradicted by Dr. Green's deposition testimony and his reports of May and September 2001. Thus, it appears that the ME overlooked or "missed,"[7] (R. at 277), these reports.

It is plain from the ME's testimony that this oversight affected his evaluation of the severity of Plaintiff's carpal tunnel. The ME specifically allowed that if Plaintiff's "complaints referable to the right hand can be corroborated on clinical examination ... and if it shows that he has findings consistent with a carpal tunnel, on that basis one would recommend certain restrictions." (R. at 282) Since Dr. Green's diagnosis of a recurrence of carpal tunnel was corroborated by findings upon examination, (R. at 82, 197), the Court concludes that the ME would have recommended restrictions on Plaintiff's use of his right hand if the ME had seen Dr. Green's deposition testimony and later reports. With such a recommendation, it is likely that the ALJ, who found that the ME's opinion was entitled to great weight, would have determined that Plaintiff's carpal tunnel was severe.

Thus, the Court finds that the ALJ's finding that Plaintiff's carpal tunnel syndrome is not severe is not supported by substantial evidence. The ALJ and the ME both overlooked Dr. Green's deposition testimony and his reports of May 30, 2001, and September 12, 2001, all of which reflect that Plaintiff's carpal

---

[7] The Court notes that on two occasions while testifying the ME made reference to the possibility that he had missed something in the record. See (R. at 277)("unless I missed it"); (R. at 280)("unless I'm missing something here"). While not conclusive evidence, the ME's qualifying phraseology suggests some uncertainty on the his part regarding his review of the medical record.

tunnel had returned and that Plaintiff continued to experience difficulties with his right hand.[8]

**II. Substantial evidence does not support the ALJ's finding that Plaintiff was not entirely credible.**

The ALJ found Plaintiff to be less than fully credible. She wrote in part:

> The claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports. The claimant testified his carpal tunnel has returned and he experiences hand tingling and numbness. However, the record reflects no current complaints, and follow-up electromagnetic studies were normal. The claimant has not had elbow treatment for years and **his carpal tunnel symptoms have resolved.**

(R. at 23)(bold added).

As already discussed in the previous section, the record indicates that Plaintiff's carpal tunnel symptoms had not resolved, (R. at 84, 196-97), and that his symptoms had returned, (R. at 84). The ALJ, like the ME, apparently overlooked or misconstrued this evidence. Because it appears that one of the primary "discrepancies between the claimant's assertions and information contained in the documentary reports," (R. at 23), upon which the ALJ relied in finding Plaintiff's testimony less than fully credible was his claim that his carpal tunnel had returned and that it limited his gripping and hand use, (R. at

[8] It is true that the ALJ included in her final hypothetical to the VE "that the individual should avoid repetitive grabbing and twisting with the right dominant hand ...," (R. at 284), and that the ALJ included this limitation in her determination of Plaintiff's residual functional capacity ("RFC"), (R. at 24, 26). However, this limitation fails to fully encompass the limitations established by Dr. Green, who testified at his deposition that essentially there should be "[n]o repetitive use ...," (R. at 85), in reference to Plaintiff's right carpal tunnel syndrome, or the limitations established by the DDS consultant, who determined that Plaintiff should "[a]void lifting, carrying, catching, grabbing [?], pinching, pulling, pushing, vibrations," (R. at 229).

23), the Court concludes that the ALJ's credibility finding is flawed and not supported by substantial evidence.

In reaching this conclusion, the Court notes that the first alleged discrepancy which the ALJ cited in finding Plaintiff not entirely credible was his claim that his carpal tunnel has returned and that he experiences hand tingling and numbness. (Id.) While it is possible that the ALJ would have found Plaintiff less than fully credible based on the other discrepancies between his testimony and the documentary reports which she cites, (R. at 23), the Court declines to make this assumption. Given that the ALJ attached great weight to the opinion of the ME and that the ME overlooked substantial evidence in the record which corroborated, or at the very least supported, Plaintiff's testimony regarding his carpal tunnel, the Court lacks confidence that the ALJ would reach the same conclusion regarding Plaintiff's credibility if she had had the benefit of an opinion from a ME who had reviewed the entire record. Accordingly, the Court does not find that the ALJ's misstatement regarding Plaintiff's carpal tunnel syndrome can be viewed as harmless error.

**Summary**

The ALJ and ME overlooked or misconstrued evidence in the record regarding Plaintiff's carpal tunnel syndrome. As a consequence of this error, the ALJ's finding that Plaintiff's carpal tunnel syndrome is not a severe impairment is not supported by substantial evidence. In addition, the ALJ's credibility determination is not supported by substantial evidence because she mistakenly believed that there was a discrepancy between Plaintiff's assertions that his carpal tunnel syndrome had returned[9] and the medical information contained in

---

[9] Plaintiff testified at the hearing that his carpal tunnel had "come back," (R. at 264), and that "[i]t's just about the same way it was," (id.). He further testified that he had "[n]umbness and tingling throughout [his] whole hand," (R. at 265), and that this

the record. In fact, the evidence in the record supported Plaintiff's testimony regarding his carpal tunnel.

On remand, the Commissioner is directed to have the entire medical record reviewed by a qualified medical expert. In addition, the ALJ is reminded on remand that "[w]hen a VE ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE ... evidence and information provided in the [Dictionary of Occupational Titles ("DOT")]." SSR 00-4p, 2000 WL 1898704, at *4. The Court includes this reminder because it appears that the ALJ neglected to make this inquiry at the hearing.[10]

**Conclusion**

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is not supported by substantial evidence in the record. Accordingly, I order that Plaintiff's Motion to Reverse and Remand be granted and that Defendant's Motion to Affirm be denied.

So ordered.

---

feeling was "constant," (id.). The ALJ specifically cited Plaintiff's complaints of hand tingling and numbness in finding a discrepancy between his testimony and the information contained in the documentary record. (R. at 23) Yet, this testimony by Plaintiff was in fact consistent with the medical record. (R. at 82-84, 91-92, 94-95, 99, 101)

[10] Plaintiff argued in his memorandum that the Dictionary of Occupational Titles ("DOT") code numbers, which appear to correspond to the positions the VE identified that the hypothetical claimant would be capable of performing, i.e., cashier (DOT 211.462-010), assembly worker(DOT 706.687-010), and machine operator (DOT 616.380-018), all involve "frequent handling," Plaintiff's Mem. at 20, or "repetitive activity," id., and that such capability was inconsistent with the ALJ's requirement that "the individual should avoid repetitive grabbing and twisting with the right dominant hand ...," (R. at 284). While the Court finds it unnecessary to address this claim of error, the attention of the ALJ is directed to the provisions of SSR 00-4p.

ENTER:

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
April 10, 2008